Evangelina **PENA** and Ovidio Pena, Individually and as Representative of the Estate of Daniel Pena, Deceased, and as Next Friends for Daniel Nathan Pena and Patrick Adrian Pena, Minors, Appellants,

v.

**TXO PRODUCTION CORPORATION,**
Appellee.

No. 13–91–121–CV.

Court of Appeals of Texas,
Corpus Christi.

March 19, 1992.

Rehearing Overruled April 16, 1992.

Roy D. Quillian, III, San Antonio, for appellants.

William A. Abernethy, Meredith, Donnell & Abernethy, Corpus Christi, for appellee.

Before GILBERTO HINOJOSA, DORSEY and BISSETT, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

In this wrongful death and survival action the plaintiffs[1] appeal from entry of summary judgment in favor of the defendant, TXO Production Corp., a mineral lessor. The issue presented is whether the plaintiffs' response to the defendant's mo-

tion for summary judgment presented some controverting evidence that TXO had a right of control over its subcontractor's work, and therefore owed a duty of care to the plaintiff, one of the subcontractor's employees. *See Exxon v. Quinn*, 726 S.W.2d 17, 20 (Tex.1987). We find it did and reverse.

## A. FACTS ALLEGED IN THE PLAINTIFF'S PETITION

The plaintiffs' sixth amended original petition alleged that Daniel Pena, the decedent, was employed by C.G.C. Well Salvaging, Inc. (C.G.C.) at the time of the accident causing his death. TXO was the general contractor, mineral lessee, and well operator on the "TXO Bade" lease where the accident occurred. TXO contracted with C.G.C. to plug a well on the lease.

Daniel Pena died as a result of injuries he suffered while working on a workover rig that collapsed. Pena was on top of the rig while it was pulling tubing. When the rig collapsed, Pena fell and then was crushed by falling debris.

The plaintiffs' allege that TXO was negligent in failing to properly supervise and control C.G.C.'s work, and that these acts were a proximate cause of the damages suffered by the decedent and the plaintiffs.

The plaintiff also alleged that TXO retained the right to control the manner and method of C.G.C.'s work.

## B. FACTS ALLEGED IN THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING SUMMARY JUDGMENT EVIDENCE

TXO's motion for summary judgment alleged that TXO was not liable for damages caused by the accident because it owed no duty to the decedent. Specifically, TXO argued that it owed no duty because it was an occupier of the property, C.G.C. was the subcontractor, and TXO did not have any contractual or actual right of control over C.G.C.'s work.

[1] This action is brought by Evangelina and Ovidio Pena, representing themselves and the estate of their son Daniel Pena (the decedent) and as next friends for two minors, Daniel and Patrick Pena. For convenience we refer to these parties as the plaintiffs or appellants as the context requires.

TXO's summary judgment evidence also included an affidavit from Gene Smith, a TXO employee. The affidavit stated that TXO had no right to control Well Salvaging or its employees in the performance of this job.

## C. FACTS ALLEGED IN THE PLAINTIFFS' RESPONDING MOTION AND CONTROVERTING SUMMARY JUDGMENT EVIDENCE

The plaintiffs' response to the motion for summary judgment alleged that TXO did indeed have a right to control C.G.C.'s activities. The summary judgment evidence in support of the motion included an affidavit of Martin Olvera.

Olvera's affidavit stated that Gene Smith was the TXO company man. Smith was supervising the workover where the accident occurred. Smith discussed the order of work with the independent contractor's "rig pusher." And Smith verbally and in writing provided the rig pusher instructions regarding when to "rig up" and start coming out of the hole. Smith also gave "step by step" instructions regarding the order of work.

## D. SUMMARY JUDGMENT STANDARDS OF REVIEW

In assessing the propriety of a motion for summary judgment, this Court and the trial court apply essentially the same standard. The issue is whether the movant's written motion for summary judgment and supporting evidence establish as a matter of law its right to judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); TEX.R.CIV.P. 166a. The evidence, any doubt, and all reasonable inferences must be indulged in the non-movant's favor. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984).

If the movant's motion and competent summary judgment evidence establish its right to judgment as a matter of law, the non-movant must present controverting summary judgment evidence raising a fact issue. *See Trapnell v. John Hogan Interests, Inc.*, 809 S.W.2d 606, 611 (Tex.App.— Corpus Christi 1991, writ denied).

## E. ANALYSIS

Three elements compose a cause of action for negligence: duty, breach of duty, and damages proximately caused by the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). "Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant...." *Id.*

A general contractor on a work site or other party in control of a premises is charged with the same duty as an owner, occupier, or leaseholder. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985). This duty is to use reasonable care to keep conditions on the premises safe. *Id.* The owner, occupier, general contractor, or other party in control of the premises may become directly liable if the injury-causing event arises from a premises defect or an activity on the premises. *Quinn*, 726 S.W.2d at 20. Thus, the party in control of the premises may be liable under two theories for activity on the premises: premises defect or a right to control the independent contractor. *Id.*

If the party in control of the premises hires an independent contractor to conduct work on the premises, and delegates all rights to control any part of the work to the independent contractor, the party in control of the premises owes no duty to the independent contractor's employees. *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976). If, through no defect in the premises, such employees are injured while conducting an activity on the premises, the party in control of the premises is not liable. *Id.* The party in control is not an insurer for the independent contractor's employees. *Abalos*, 544 S.W.2d at 631.

Conversely, if the party in control of the premises retains some control over the independent contractor's work, and it negligently exercises the control, it may be liable for injuries caused. The Restatement (Second) of Torts states this view:

One who entrusts work to an independent contractor, but who retains the con-

trol of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1977), *adopted in Redinger*, 689 S.W.2d at 418.

The party-in-control's right to control an independent contractor or its employees can arise by contract or a course of dealing. *Pollard v. Missouri Pac. R.R.*, 759 S.W.2d 670, 671 (Tex.1988) (Per curiam reversal on motion for rehearing of application for writ of error) (right to control may have contractual basis); *Redinger*, 689 S.W.2d at 418 (course of dealing).

In *Abalos* the Supreme Court of Texas held a mineral lesee owed no duty to an independent contractor's employee. That case presented facts which conclusively showed that the independent contractor was "in control of the entire operation." *Abalos*, 544 S.W.2d at 632. In contrast is *Redinger*, in which the evidence showed the general contractor retained and exercised some control over the manner in whereby the independent contractor's work was conducted. The *Redinger* Court stated that for a duty to arise between the general contractor and the independent contractor's employees, the general contractor must retain more control than merely the right to order the work to start or stop, inspect progress, or receive reports. *Id.* at 418.

In the instant case, the defendant's (movant's) summary judgment evidence, an affidavit from Gene Smith the TXO company man, stated that C.G.C.'s employees were completely under C.G.C.'s control. However, the plaintiffs' summary judgment evidence, an affidavit from a fellow employee of Pena, indicated that 1) Smith was supervising the workover where the accident occurred; 2) Smith discussed the order of work with the independent contractor's "rig pusher;" 3) Smith verbally and in writing provided the rig pusher instructions regarding when to "rig up" and start coming out of the hole; 4) Smith gave "step by step" instructions regarding the

order of work; and 5) "Smith coordinated the order in which different people on the lease would do their part of the work." If Smith's retention and exercise of supervisory control is the issue, the affidavit clearly states that Smith was "supervising the workover...."

Evidence of retention of supervisory control is found in Olvera's affidavit where he states: "Smith also gave the pusher a piece of paper which had the order of work on it, that is, what to do step by step." Step by step instructions regarding what to do goes beyond the "general right to order the work to start or stop" *Redinger*, 689 S.W.2d at 418; Restatement (Second) of Torts, § 414 *comment a* (retention of power to direct order of work may subject general contractor to liability); *comment c* (liability may attach to general contractor if subcontractor is not entirely free to do the work in his own way). This is evidence of retention of supervisory control and coordination of specific subcontractor activities.

Construing the summary judgment evidence in the light most favorable to the non-movant, we must consider the affiant's terms "supervising the workover" and giving "step by step" instructions in their broadest sense, *i.e.* favoring retention of control.

We hold this evidence sufficient to raise a fact issue regarding TXO's right to control C.G.C. Like *Trapnell*, 809 S.W.2d at 611, this case presents conflicting summary judgment evidence on the dispositive issue. Construing the evidence in the light most favorable to the nonmovant, here the plaintiff, we must reverse this summary judgment.

This cause is REVERSED and REMANDED to the trial court.