Gary WILKERSON and Jana Wilkerson, Plaintiff,

v.

MOBIL OIL CORPORATION, Defendant.

No. 1:93–CV–525.

United States District Court, E.D. Texas, Beaumont Division.

July 3, 1996.

curred called for the use of "shoring" to support the structural steel beams which had to be cut in order to insert a new steel column into the structure. The summary judgment evidence presented to the Court indicates that neither Larry Yard, Mobil's safety agent in the area, nor William Watson, an engineering contractor employee involved in design aspects of the project, knew of the boomer's use until after the accident. Plaintiff Wilkerson also alleges he did not know a boomer was being used in place of jacks and shoring materials.

The contract between Mobil and A & B contains several provisions which are clearly intended to establish A & B as an independent contractor. The Plaintiff has not averred that the provisions of the contract as establishing any other relationship. Rather, the Plaintiffs contend the Defendant exercised actual control over the details of the work, thus making them liable for failure to exercise such control in a reasonable manner. For this reason, the Court will not include the myriad contract provisions.

Gilbert T. Adams, Jr., Beaumont, TX, for Plaintiff.

David J. Plavnicky, Steven Earl Goodson, Franklin H. Jones, Lizbeth Anne Tulloch, Lea Plavnicky & Seabolt, Houston, TX, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

### BACKGROUND

The Plaintiff, Gary Wilkerson, sustained an injury to the head on July 18, 1992. Mr. Wilkerson, a Texas resident, was employed by A & B Builders, Inc. ("A & B") as a foreman to work on a project for the Defendant, Mobil Oil Corporation ("Mobil"), a resident of New York. Mobil contracted with A & B for the expansion of the Blending and Packaging plant building. The Plaintiff was injured in an accident involving the use of a "boomer" or "load-binder" to support steel roof beams during part of the project. The portion of the job in which the accident oc-

### ANALYSIS

Mobil seeks summary relief from this Court by asserting that, as the landowner who hired an independent contractor, Mobil has no duty to Wilkerson, an employee under A & B's control. The Plaintiffs maintain that while Mobil does not generally owe a duty to employees under the control of an independent contractor, Mobil possessed and exercised control sufficient to overcome the general rule.

#### Summary Judgment Standards

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348,

1355–57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[1] *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Topalian v. Ehrman,* 954 F.2d 1125, 1131–32 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. *See Celotex,* 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 457, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); *see also Topalian,* 954 F.2d at 1131.

### An Independent Contractor's Duty

■ An occupier of land has the duty to use reasonable care to keep the premises under his control in safe condition. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex. 1985). A general contractor on a construction site, who is in control of the premises, is charged with the same duty as an occupier. *Id.* The general contractor, like the owner, may be subject to direct liability for negligence arising from either a premises defect or some activity at the site. *Davis v. R. Sanders & Associates Custom Builders, Inc.,*

891 S.W.2d 779, 781 (Tex.App.—Texarkana 1995, no writ). However, an owner or general contractor does NOT have a duty to see that an independent contractor performs work safely. *Id.* It is only when either the owner, general contractor, or both retain some right of control over the manner of a subcontractor's work that liability arises if there is failure to exercise reasonable care in supervising the subcontractor's activity. RESTATEMENT (SECOND) OF TORTS § 415 (1965). In order to be liable, the general contractor must retain at least some control over the manner and way the work is done. *Davis,* 891 S.W.2d at 782. It is not enough that the general contractor may dictate the results of the work or has a general right to order the work stopped or resumed, to inspect its progress and receive reports, to make suggestions that need not necessarily be followed, or to prescribe alterations and deviations. *Id.* The general contractor must retain enough right of supervision over the manner and details of the work that the subcontractor is not entirely free to do the work in his own way. RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965). The underlying rationale for the rule is that the subcontractor is in a better position to find and eliminate or to warn its employees about safety hazards. *Shell Chemical Co. v. Lamb,* 493 S.W.2d 742, 748 (Tex.1973). More than a slight degree of control is required. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19–20 (Tex.1987); *Wilson v. Goodyear Tire & Rubber Co.,* 753 S.W.2d 442, 446–47 (Tex.App.—Texarkana 1988, writ denied).

■ Under Texas law, there are two ways in which the necessary retention of control is established. First, the contract itself may evidence the general contractor (or owner) explicitly retained control in the contract with the subcontractor (or contractor). Second, the general contractor (or owner) may actually exercise control over the work of the subcontractor (or contractor). Examples of the first situation include *Pollard v. Missouri*

---

1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id., See also, Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992).

*Pacific R.R.*, 759 S.W.2d 670, 671 (Tex.1988) (written contract gave employer control over access and storage of materials); *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 470 (Tex. 1985) (written contract gave owner the right to take possession of well and discontinue drilling on the basis of carelessness, inattention or incompetency on the part of the contractor); and *Lawson–Avila Const., Inc. v. Stoutamire*, 791 S.W.2d 584, 589 (Tex.App.— San Antonio 1990, writ denied) (written contract made general contractor responsible for all construction techniques and procedures). Examples of retention of control shown by an actual exercise of control include *Enserch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex.1990) (employer provided procedure manual for contractor's employees), and *Pena v. TXO Production Corp.*, 828 S.W.2d 188, 190 (Tex. App.—Corpus Christi 1992, no writ) (general contractor's employee gave "step by step" instructions to subcontractor).

The parties to a contract may expressly allocate the right of control between them, but such a written contractual allocation does not absolve a defendant of liability. *Ponder v. Morrison–Knudsen Co.*, 685 F.Supp. 1359, 1364 (E.D.Tex.1988) By acting inconsistently with the terms of their original contract, the parties may alter the contractual relationship. *Id.; See also Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964). The Plaintiffs maintain Mobil actually exercised control in the course of dealing and thereby altered the contract.

The summary judgment evidence raises a factual question as to whether or not Mobil retained actual control over the details of the project. Larry Yard, the Mobil Safety Inspector, testified concerning several meetings held between Mobil, A & B, and others. (Yard Deposition, p. 125). These meetings took place before the job commenced and after the project had begun. (Id.) The meetings took place fairly regularly and have been characterized as "weekly." (Id.). William "Pat" Stout, another Mobil employee, also attended these meetings. Wilkerson has testified that much of the work was coordinated at these meetings and that Stout was responsible for scheduling when and where A & B could work in the plant. (Wilkerson Deposition, p. 90–91 and Stout Deposition, p. 113). Problems and anticipated problems for doing the work were discussed (i.e. whether certain equipment was needed to do a particular job). (Yard Depo. at 127 and Wilkerson Depo. at 90). Stout, after collaboration with an outside engineering consultant, would answer whatever engineering questions A & B had. (Yard Depo. at 129). Yard, Stout, and Ferguson, another Mobil employee, would coordinate work between the various contractors. (Yard Depo. at 118). The summary judgment record is replete with additional references to the level of control exercised by Mobil. The amount of control actually exercised by Mobil is disputed by Wilkerson's testimony and by testimony from Mobil's own employees.

### Conclusion

When viewed in the light most favorable to the Plaintiffs, as this Court is required to do, a reasonable mind could infer Mobil actually exercised control over the details of the project through its coordination, limitations, and directions. Accordingly, summary judgment is inappropriate at this time.